511 P.2d 755

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Armando VEGA, Defendant-Appellant.**

**No. 1100.**

Court of Appeals of New Mexico.

June 13, 1973.

Langford Keith, Jr., Foy & Keith, Silver City, for defendant-appellant.

David L. Norvell, Atty. Gen., Jane E. Pendleton, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of the unlawful sale of a depressant drug contrary to § 54–6–38(B), N.M.S.A. 1953 (Repl. Vol. 1962, pt. 2, Supp. 1971) defendant appeals asserting three points for reversal. The third point relating to the trial court's failure to grant a mistrial is dispositive of the appeal.

We reverse.

During the course of the state's case the names of Marlin Strange, Tom Garlow, Mickey Aragon, Butch Hale, Donnie Phillips and Wallita Collums were mentioned several times as associates or friends of defendant. All of these individuals had been present when the alleged sale was made. The state's case rested primarily on the testimony of an undercover agent who made the alleged purchase from defendant. Defendant was the sole witness for the defense and denied the sale.

The state, in the presence of the jury, stated that it would call Strange, Garlow, Aragon, Hale, Phillips and Collums as rebuttal witnesses. Collums was called first and after several questions and answers defendant objected on the ground that the testimony was "not rebutting anything." The objection was sustained. Garlow was called next and refused to testify for the reason that "The answer to that question may incriminate me." Defendant's motion for a mistrial on the grounds of prejudice was denied. The prosecution then stated:

"* * * These witnesses have refused to talk. They have said they would state in Court they wouldn't talk to us, Your Honor."

The jury was excused and Aragon was called. He stated he could not remember anything. The state then rested its case. Defendant again moved for a mistrial "* * * on the ground of the five [sic] rebuttal witnesses having been called by the State and being sworn and presented in front of the Jury and it was only done for the purpose of prejudicing the Defendant in the eyes of the Jury. * * *"

It is apparent from the foregoing that the state was aware that the witnesses would not testify. We do not ascribe any particular motive to the state in the calling of the six witnesses in spite of its stated information regarding their refusal to talk. We discuss only the issue of prejudice to the defendant.

This precise question has not heretofore been passed upon by this court or the New Mexico Supreme Court. It is not, however, a novel question to the courts of other jurisdictions. See Annot., 86 A.L.R.2d 1443 (1962) and A.L.R.2d, Later Case Service, Supp. 85–91 A.L.R.2d (1968).

Without passing on the question presented in the instant case the United States Supreme Court in commenting on the various lower Federal Court opinions stated in Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963):

"None of the several decisions dealing with this question suggests that reversible error is invariably committed whenever a witness claims his privilege not to answer. Rather, the lower courts have looked to the surrounding circumstances

in each case, focusing primarily on two factors, each of which suggests a distinct ground of error. First, some courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. This seems to have been one of the principal reasons underlying the finding of reversible error in United States v. Maloney, supra. [262 F.2d 535 (2d Cir., 1959)]. In that case, the prosecution admitted knowing that two of its key witnesses could validly invoke the privilege against self-incrimination and intended to do so. The prosecutor nevertheless called and questioned them. The court also found that the Government's closing argument attempted to make use of the adverse inferences from their refusals to testify. See also United States v. Tucker, 3 Cir., 267 F.2d 212. A second theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant. This theory seems also to have been present to some extent in the Maloney decision, where the court noted that the challenged inferences were the only corroboration for dubious and interested testimony by the Government's chief witness. 262 F.2d, at 536–537. On the other hand, courts have failed to find reversible error when such episodes were 'no more than minor lapses through a long trial.' United States v. Hiss, 185 F.2d 822, 832 (C.A. 2d Cir.). See also United States v. Amadio, 215 F.2d 605, 614 (C.A. 7th Cir.). And even when the objectionable inferences might have been found prejudicial, it has been held that instructions to the jury to disregard them sufficiently cured the error." [footnote omitted].

In the instant case we have the following circumstances: the defendant denying the sale to the undercover agent; the statement by the prosecutor that he would call six rebuttal witnesses and the reasonable implication thereby conveyed to the jury that the witnesses would contradict defendant's testimony; the state's knowledge that the witnesses would refuse to talk; and a witness refusing to testify on the grounds the answer may tend to incriminate him.

Under the foregoing posture we think the language in State v. Johnson, 243 Or. 532, 413 P.2d 383 (1966) most appropriate:

"In State v. Harper, supra, [33 Or. 524, 55 P. 1075 (1899)] this court reversed the guilty judgment because the trial court permitted the district attorney to comment upon the guilt of the defendant to be inferred from the state's witness invoking his constitutional right. In this case, the district attorney refrained from making comment. Nevertheless, it would seem equally reversible error for the state to call a witness, who it appears from prior testimony, already in the record, may have been closely associated with the defendant in the scheme to defraud, and the witness has been indicted for but not convicted of his purported participation in that scheme, *when the state knows that the witness will invoke his constitutional right, and, with this knowledge, asks questions from which the jurors themselves could infer that if the questions were answered truthfully the answers would tend to establish the guilt of the defendant.*" (Emphasis ours.)

We deem it of no significance that in the *Johnson* case the witness who was called had been indicted while, as far as appears from the record, the witnesses in the present case had not been criminally charged. It is sufficient that the witnesses were present when the alleged purchase took place and that the prosecution knew they would decline to testify in rebuttal.

We cannot agree with the state that the error "without any showing that defendant was affected thereby is at best a species of

harmless error." Nor can we agree with the proposition that defendant has the burden of showing prejudice. Under the circumstances of this case prejudice is presumed. Once the state has obtained the benefit of the inference of defendant's guilt, which is not subject to cross-examination, it cannot have the benefit of a presumption that this inference was not prejudical and shift the burden to defendant to show there was prejudice. The witnesses' right to invoke the constitutional right of self-incrimination is a personal privilege over which defendant has no control. Under the circumstances of this case the state does have control, that is to say, the state need not call the witness when it knows the witness, who was associated with defendant, will refuse to testify on the grounds that it may incriminate him. " * * * If the state is at any time uncertain whether or not a witness will refuse to testify, this can easily be determined before the trial court in the absence of the jury and the appearance of purposeful prejudice avoided." State v. Johnson, supra.

Reversed and remanded for a new trial. It is so ordered.

HERNANDEZ, J., concurs.

LOPEZ, J., dissents.

LOPEZ, Judge (dissenting).

Defendant was tried and convicted by a jury for the sale of a depressant drug contrary to § 54-6-38(B), N.M.S.A. 1953 (Repl. Vol. 8, pt. 2, Supp. 1971). He appeals from his conviction and sentence.

I would affirm.

The defendant asserts three points for reversal: (1) that the trial court committed error in failing to dismiss the case with prejudice for failure to commence the trial thereof within ninety days from the defendant's arrest and the failure to bring this case to trial within six months of the defendant's arrest; (2) that the trial court committed reversible error in admitting testimony as to the defendant's reason for committing the crime of unlawfully selling a depressant drug; (3) that the trial court committed reversible error in failing to grant the defendant's motion for a mistrial based upon the state's calling its rebuttal witnesses.

(1) *The trial court did not err in failing to dismiss this case with prejudice for failure to commence the trial thereof within ninety days from the defendant's arrest and failure to bring this case to trial within six months of defendant's arrest.*

The defendant was arrested on August 11, 1971 and an information was filed in the district court on September 9, 1971. Jury trial was commenced on February 16, 1972.

The defendant cites § 41-11-4.1, N.M.S.A. 1953 (Repl. Vol. 6, Supp. 1971), which reads as follows:

"41-11-4.1. Commencement of trials —Unnecessary delay—Time limit in felony cases.—All persons charged with the commission of a crime shall be brought to trial without unnecessary delay. Whenever the crime charged is a felony, the district court shall fix a date for commencement of the trial, which date shall be within ninety [90] days from the time of the person's arrest, and the trial shall begin on that date unless postponed by the court from time to time for good cause shown. * * *"

Defendant contends his case should have been dismissed by the trial court because no trial date was set within ninety days after the defendant's arrest and the defendant was not brought to trial within six months after the arrest. Defendant contends that there is a conflict between § 41-11-4.1, supra, and Rule 95 which is § 21-1-1(95), N.M.S.A. 1953 (Repl. Vol. 4, Supp. 1971). Rule 95 was adopted on February 18, 1971 by the Supreme Court and took effect on July 1, 1971.

Our Supreme Court in State v. Stanley, 83 N.M. 626, 495 P.2d 1073 (1972) and this appeals court in State v. Seaton, 84 N.M. 582, 505 P.2d 1258 (Ct.App. 1973) and

State v. Hamilton, (Ct.App.) No. 1018, decided January 12, 1973 have ruled that the six months limitation commences to run from the date of the filing of the information of a criminal offense in the district court and not from the date of the defendant's arrest. Therefore, the trial court was correct in denying the defendant's motion to dismiss the case.

(2) *The trial court did not err in admitting testimony as to the defendant's reason for committing the crime of unlawfully selling a depressant drug.*

The defendant frames his second point for reversal as if the trial court had allowed testimony to go to the jury as to a prior conviction of the defendant, but this is not correct. The transcript reveals that the state's witness was allowed to testify to the following colloquy which took place between the assistant district attorney and the state witness, Mr. King:

"MR. BRYAN: Mr. King, would you tell us what Armando Vega said to you?

"A Yes, sir.

"Q On the night of August 3rd.

"A On August the 3rd? Yes, Sir. Mr. Vega stated that he was priorily involved in a drug arrest and that he was very hot; that the police here were on to him and that he wanted to get rid of all the pills except for maybe a personal stash. In other words, he wanted to get rid of everything so he didn't have any large quantities in his possession."

The witness did not testify that the defendant was convicted of a prior crime. He only testified concerning the circumstances and the reason the defendant gave to the witness for getting rid of the drugs he had at the time. The testimony of the witness had reference to the crime for which the defendant was being tried. The testimony further established the circumstances leading to the transaction of the sale of the drug by the defendant to the witness. The testimony of the state witness merely threw light upon the guilt of the defendant. State v. Peke, 70 N.M. 108, 371 P.2d 226 (1962). The evidence was competent, relevant, and material and it was admitted properly by the court to prove the crime for which the defendant was being tried. This evidence was admissible pursuant to the rule announced by the court in State v. Borrego, 52 N.M. 202, 195 P.2d 622 (1948). In State v. Borrego, supra, the court held that if evidence tends to prove the person on trial guilty of some other crime, but if the evidence is competent, relevant and material, it should not be excluded. That is what happened in this case. Woodland v. United States, 347 F.2d 956 (10th Cir. 1965); Morgan v. United States, 355 F.2d 43 (10th Cir. 1966). The transcript reveals that the defendant also testified regarding prior drug offenses. Therefore, the testimony of the state could not have resulted in any prejudice. State v. Coyle, 39 N.M. 151, 42 P.2d 770 (1935); State v. Vasquez, 83 N.M. 388, 492 P.2d 1005 (Ct.App. 1971); State v. Carlton, 82 N.M. 537, 484 P.2d 757 (Ct.App. 1971).

(3) *The trial court properly denied the defendant's motion for mistrial based upon the state's calling rebuttal witnesses.*

The defendant contends that the state called six rebuttal witnesses who were friends of the defendant to testify and that the reason and motive of the state was to create prejudice on the jury against the defendant. The transcript reveals that only three of the rebuttal witnesses actually testified. One rebuttal witness refused to testify on grounds of possible self-incrimination. The defendant knew the rebuttal witnesses. He cannot claim surprise nor can he claim that he did not anticipate their presence; he cannot claim lack of opportunity to have talked to these witnesses. The defendant has failed to show any prejudice and abuse of discretion of the trial court in denying his motion for mistrial. The motion for mistrial is addressed to the sound discretion of the trial court and its ruling will not be reversed unless there is an abuse of discretion. State v. Guy, 82 N.M. 483, 483 P.2d 1323 (Ct.App. 1971);

State v. Maes, 81 N.M. 550, 469 P.2d 529 (Ct.App. 1970). The court in the *Maes* case stated:

"The trial court has the duty of seeing that there is a fair and impartial jury. In doing so it must exercise discretion. The trial court's decision will not be disturbed unless there is manifest error or a clear abuse of discretion. State v. Verdugo, 78 N.M. 762, 438 P.2d 172 (Ct.App. 1968)."

The defendant claims that the court committed error on an instruction as to the rebuttal testimony. Defendant failed to tender his own instruction and thus waived any alleged error on appeal. State v. Lopez, 79 N.M. 282, 442 P.2d 594 (1968); State v. Hatley, 72 N.M. 280, 383 P.2d 247 (1963).

I would affirm the judgment and sentence of the lower court and, therefore, dissent from the majority opinion.