People of the State of Illinois, Appellee, v. Benny Walker, Appellant.

Gen. No. 49,683.

First District, Third Division.

February 18, 1965.

A. Carter Howard, Jr., of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Lester A. Bonaguro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

The defendant was convicted of the illegal possession of narcotics and sentenced to a minimum of five years and a maximum of ten years in the penitentiary. On appeal, defendant makes only two points: (1) that he was deprived of his liberty without due process of law, in that he was not represented by counsel during the early stages of the proceeding against him,

and (2) that the trial court erred in refusing to admit photographic evidence presented by him. The usual argument with respect to reasonable doubt is not made in this case.

The state's case follows. On June 28, 1963, Officer Bernard Brown of the Chicago Police Department Narcotics Unit secured a search warrant authorizing the search of defendant's apartment at 6310 South Drexel Boulevard, in Chicago. At about 10:30 p. m. on the same day, Officer Brown and three other police officers went to the above address, a three-story brick building. They found the vestibule door open and walked up to the third floor hallway, where they observed a woman coming out of a washroom. This was Irma Harvey, defendant's girl friend. The officers asked her if she lived in the third floor rear apartment. She said she did. They told her they were police officers and asked her to knock on the door, but she refused. Officer Brown knocked, and a voice from within the apartment said, "Irma, Irma, is that you? " Officer Brown replied, "No, this is a police officer, we have a search warrant. Open the door." Whereupon, Officer Brown heard the sound of running feet, and through the frosted glass in the door, he saw a shadowy figure moving away from the door.

Officer Brown broke the glass in the door and entered the apartment. Upon entering, he saw the defendant in the bedroom, punching at the screen on a rear window. As Brown ran up to him, he saw a small plastic vial in the defendant's hand. Brown grabbed for it, but the defendant threw it out of the open window. Brown watched the vial land on a garage roof two stories below. He immediately left the apartment and went down the back stairs while one of his partners held a flashlight on the vial. Brown recovered the vial, opened it, and found that it contained five tinfoil packages of white powder, which

were later identified as heroin. Brown confronted defendant with the vial, and defendant told him that it was his, that this was all the "stuff" he had left for his own personal use and that he did not sell narcotics.

After defendant's arrest, he was taken to the police station where he admitted he was addicted to narcotics and that he used four "bags" (tinfoil packages) a day. He also admitted that some of the syringes found in his apartment were his. At the trial Officer Brown and the two other officers who had accompanied him to Walker's apartment testified to the facts hereinbefore set out.

Defendant testified in his own behalf that on the night in question, several police officers broke through the door of his apartment; that they searched both him and his apartment; that the search produced no narcotics nor any evidence of narcotics being on the premises, and that then Brown left and went down to the ground floor and out to the rear, and returned several minutes later with a small vial admittedly containing heroin and said "We found it, that is all we need." Defendant testified that he had not seen the vial until the morning of the trial and had not thrown it out of the window.

In rebuttal for impeachment purposes only, the state proved that defendant had been convicted of armed robbery on June 7, 1950.

■ The defendant argues that he was deprived of liberty without due process of law, in that he was arrested on June 28, 1963, and counsel first appeared on his behalf at the hearing on arraignment on July 26, 1963. Defendant had been questioned at the police station, but there is no showing of further interrogation. At a preliminary hearing the defendant was bound to the grand jury and an indictment was returned. There is no showing that the appointment of counsel was requested nor in fact that defendant did

83

not have counsel. Defendant relies solely on Gideon v. Wainright, 372 US 335, 9 L Ed2d 799.

This issue is controlled by People v. Morris, 30 Ill2d 406, 197 NE2d 433, where the court held that the absence of counsel before arraignment was not a denial of due process. The court, after an analysis of Gideon v. Wainright, supra, said (p 410):

> "[T]he limits of that decision were that the Federal constitutional right to counsel is absolute in both capital and noncapital cases, and that the *refusal* of a State court to provide an indigent person with counsel on request is a denial of the due process clause of the fourteenth amendment. Despite defendants' urgings, we see nothing in the Gideon decision, nor in any other authority coming to our attention, holding or implying that such absolute right extends *to representation at the preliminary hearing,* or that the failure to provide counsel at such time amounts, ipso facto, to a denial of due process. (Emphasis supplied.)
>
> . . . . . .
>
> "A preliminary hearing in Illinois is not a 'critical stage' where rights or defenses must be raised or lost, and neither is it a proceeding at which pleas are made or received. Rather, the scope and purpose of preliminary proceedings are in general to ascertain whether a crime charged has been committed and, if so, whether there is probable cause to believe that it was committed by the accused. (14 ILP, Criminal Law, sec 171.) Even then a finding of probable cause is not binding upon a subsequent grand jury. These things being so, we see no basis for saying that the right to counsel arises upon preliminary

84

hearing, or that fundamental fairness requires it."

What the Illinois Supreme Court said in People v. Morris, supra, is conclusive in the case at bar.

■ Defendant argues that the court committed prejudicial error in refusing to admit certain photographs. Defendant's Exhibits 1 through 4 were purportedly photographs taken by defendant's court appointed counsel some eight and one-half months after defendant's arrest. They purported to show the rear of the building in which defendant lived and were offered by defendant for the alleged purpose of proving that the garage roof was such a distance from the window of his apartment that it was highly improbable that the vial could have been thrown to the garage roof. It is difficult to see how photographs can in and of themselves establish the distance between objects, without some testimony revealing a measure or scale by which the image may be judged. These exhibits, however, are not part of the record on appeal and we therefore are unable to consider this point. Supreme Court Rule 27(8) effective Jan. 1, 1964, relating to notice of appeal in criminal cases, provides that the record on appeal shall contain, among others, "the exhibits offered at the trial."

Judgment affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.